IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ENRIQUE VÉLEZ,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>COMMN'R OF SOC. SEC.,<br><br>Defendant. | CIV. NO.: 14-1203(SCC) |

**MEMORANDUM AND ORDER**

Petitioner Enrique Vélez asks this court to review the decision of the Commissioner of Social Security denying his application for disability benefits. After a review of the record and the parties' memoranda, I affirm the Commissioner's decision.

*STANDARD OF REVIEW*

Under the Social Security Act ("the Act"), a person is disabled if he is unable to do his prior work or, "considering

his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d). The Act provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." *Irlanda-Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991). Thus, the Commissioner's decision must be upheld if we determine that substantial evidence supports the ALJ's findings, even if we would have reached a different conclusion had we reviewed the evidence *de novo. Lizotte v. Sec'y of Health & Human Servs.*, 654 F.2d 127, 128 (1st Cir. 1981).

The scope of our review is limited. We are tasked with determining whether the ALJ employed the proper legal standards and focused facts upon the proper quantum of evidence. *See Manso-Pizarro v. Sec'y of Health and Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's decision must be reversed if his decision was derived "by ignoring evidence, misapplying law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). In reviewing a

denial of benefits, the ALJ must have considered all of the evidence in the record. 20 C.F.R. § 404.1520(a)(3).

The Act sets forth a five-step inquiry to determine whether a person is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The steps must be followed in order, and if a person is determined not to be disabled at any step, the inquiry stops. *Id.* Step one asks whether the plaintiff is currently "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, he is not disabled under the Act. *Id.* At step two, it is determined whether the plaintiff has a physical or mental impairment, or combination of impairments, that is severe and meets the Act's duration requirements. 20 C.F.R. § 404.1520(a)(4)(ii). The plaintiff bears the burden of proof as to the first two steps. Step three considers the medical severity of the plaintiff's impairments. 20 C.F.R. § 404.1520(a)(4)(iii). If, at this step, the plaintiff is determined to have an impairment that meets or equals an impairment listed in 20 C.F.R. pt. 404, subpt. P., app. 1, and meets the duration requirements, he is disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the plaintiff is not determined to be disabled at step three, his residual functional capacity ("RFC") is assessed. 20 C.F.R. §§ 404.1520(a)(4), (e). Once the RFC is determined, the inquiry proceeds to step four, which compares the plaintiff's RFC to his

past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the plaintiff can still do his past relevant work, he is not disabled. *Id.* Finally, at step five, the plaintiff's RFC is considered alongside his "age, education, and work experience to see if [he] can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). If the plaintiff can make an adjustment to other work, he is not disabled; if he cannot, he is disabled. *Id.*

## *BACKGROUND AND PROCEDURAL HISTORY*

Vélez made his initial application for disability benefits on August 30, 2011, alleging that his disability began on July 3, 2008. Vélez's last-insured date was June 30, 2011. The claim was denied initially and on reconsideration, after which Vélez requested a hearing, which was held on November 9, 2012. After the hearing, the ALJ determined that Vélez was not disabled.

The ALJ found that Vélez, despite having major depressive disorder, recurrent, without psychotic features, did not have a listed impairment. The ALJ then found that Vélez had the mental RFC to perform work at all exertional levels, so long as it was simple work, with no public interaction and only occasional interaction with co-workers and supervisors. Based

| VELEZ v. COMMISSIONER | Page 5 |
|---|---:|

on the testimony of a vocational expert, the ALJ further found that Vélez could perform his past relevant work as an automotive detailer, an unskilled job with a specific vocational preparation ("SVP") level of 2. Based on the same testimony, the ALJ also found that Vélez could perform other work that exists in significant numbers in the national economy like hand packager, labeler, and inspector–missing parts, all of which also have an SVP of 2. For this reason, the ALJ determined that Vélez was not disabled.

## *ANALYSIS*

Vélez makes two arguments, neither of which are well-developed. First, he argues that the ALJ failed to develop the record by sending him for a medical evaluation. Docket No. 28, at 8. But the ALJ is not obligated to order medical evaluations in every case, and Vélez fails to point to any discrepancies or other information in the administrative record that should have prompted the ALJ to send Vélez, specifically, for such an evaluation. I thus deem this argument waived.[1]

---

1.  Vélez also points to the fact that during the hearing, the ALJ granted Vélez 10 days to subpoena certain psychological records. *See* Docket No. 28, at 9. And the ALJ in fact waited much more than ten days to

Second, Vélez claims that the vocational expert's testimony was erroneous insofar as it called labeler, hand packager, and inspector–missing parts "simple" work. Docket No. 28, at 11. He makes this argument in reliance on the Dictionary of Occupational Terms, which he says "describes all those jobs as entailing understanding and carrying out 'detailed' written or oral instructions." *Id.* at 13. Unless Vélez is referring to something different than the descriptions in the Dictionary of Occupational Terms,[2] this argument is troublingly dishonest. I have looked up each position, and *none* of them mentions the word "detailed" or even "instructions." And, as the Commissioner

---

issue her ruling, which meant Vélez had time to comply with the ALJ's order. But Vélez doesn't say whether he submitted the records, which means he probably did not; it is thus difficult to hold against the ALJ the fact that the records weren't considered. The ALJ did all that was required of her.

2. As noted, Vélez writes that Dictionary "describes *all*" of the jobs the ALJ cited as requiring the following of "'detailed'" instructions. Docket No. 28, at 13. For this proposition, Vélez cites to nothing, but his use of quotations around "detailed," constitutes a statement that the Dictionary actually uses that word. But, at least in the descriptions of those positions, the Dictionary does not use that word. Within ten days, Vélez's attorney, Fabio A. Roman-García shall file a motion informing the Court of his source for that claim; at the same time, he must SHOW CAUSE why sanctions should not be entered against him for this apparent misrepresentation.

points out, each has an SVP of 2, meaning that they are jobs that require little instruction. And finally, Vélez's argument ignores the ALJ's alternative finding that he could perform his past relevant work as an automotive detailer, which, according to the Dictionary, also does not require following "detailed" instructions.

## *CONCLUSION*

For the reasons stated above, I affirm the decision of the Commissioner.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of September, 2015.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE